Good morning. May it please the court, counsel, Melissa Maher was victimized first by the man she had just met on campus who raped her and then by Iowa State University when it failed to provide her a safe environment free from harassment with the same opportunities as her rapist. Iowa State couldn't follow through on simple requests such as dropping classes and removing charges to her account. But it was really when she returned to campus in the fall of 2014 and discovered that the perpetrator of the crime against her was living in the building right next door to her. And then she was forced to see him regularly each week to come to the same bus stops, encountering him regularly on the way home at least twice each week. These encounters were troubling and caused her post-traumatic stress episodes where she relived the rape over and over again and was forced to choose between her sanity and her education. She asked Iowa State to provide her with different housing, at least comparable to the housing that she had, and they had nothing available. They, Iowa State offered her a hotel room that was only available on a temporary basis. She would have had to move in and out of it. They offered her a dorm, a converted dorm den with four strangers just months after she had been raped by a stranger. It was an uncomfortable situation for her and she was not moving forward. But Iowa State also said that it would offer her that it may move the perpetrator of that crime against her at a later date. And so relying on that, she stayed where she was waiting for them to finish the investigation, which is what they told her they would do. They'd finish the investigation and then they'd consider moving her. When they finished the investigation, the Director of the Equal Opportunity Office and the Title IX Coordinator advocated for her on her behalf to try and get them to move the perpetrator of the crime and they did nothing at that time. And they did nothing at that time to move her. They had nothing available to her. Iowa State argues that the single room was available to her, but that is actually not in the record. It is in the court findings and that's what Iowa State, the district court findings, that's what Iowa State cites to. But they don't cite to the actual record for facts that show that she was offered a single room. I think you said that they offered to move her after the investigation? They never offered to move her after the investigation. They said that they would consider moving the perpetrator after the investigation. They did not want to move him while the investigation was pending. And that is in the record. But they never made an offer after the investigation. They stated they would not move him and they did not make an offer to her at that point in time to move her to any housing. So why doesn't her cause of action accrue when they make the offers that are deemed to be unacceptable? Because at least at that point in time they're making an effort and they're indicating that they're going to continue to make an effort by stating that they were not going to do something now, but when the investigation was over they would do something. Doesn't she begin to incur her harm, her damage at that point in time? She does start to incur her harm. Isn't that when the cause of action would accrue? They still have to be deliberately indifferent. And if they're offering to do something I can't say that they're being deliberately indifferent. So you don't think they were being deliberately indifferent when they didn't offer her something comparable to what she was currently in? Well, I think the case law is pretty clear in stating that she doesn't get to choose what remedy she gets. Although I think there is a problem at that point in time in the fact that they don't have anything that's comparable. But if they don't have anything I don't think we can force them to offer something they don't have. But at the same time they're saying that they generally have available single rooms, so once the investigation is over you're not causing any more harm, so why didn't they move them in? If they weren't deliberately indifferent when they made the initial offers, at what point did they become deliberately indifferent? After their investigation, when they said we'll do something after the investigation and then they did nothing. They refused to move him even though they found that he had raped her. And they had, they made no offer to her. I thought he got removed from school or he left or something. He left at the end of the semester but she had already left by that time. He made it all the way through the semester and actually transferred to another school. There wasn't a finding, there wasn't, he wasn't actually expelled by a finding until I think the following July of 2015. So the rape happened in March of 2015. The administrative process didn't actually conclude until July of 2015 but then he went through all of the appeals that were available to him after that point in time. So I don't think the cause of action accrues at the time they're making offers and trying to work something through because it's pretty clear that at least they're trying to do something. It's when they just drop the ball and say well we're not going to do anything and she has to choose between staying where she is which doesn't give her a safe environment and she can't focus on her studies. And so, you know, you're coming back to that basic statement in Title IX that no person on the basis of sex be excluded from participation or be denied the benefits or subjected to discrimination under any education program or activity. And that's what she's not receiving at that point in time. She tried to stay as long as she possibly could but realized when they're not doing anything for her that that's just not going to work. So the, well, let me ask it this way. Is it clear from the record that on August the 20th, 2014, the university offered to move her to converted den space or move her and her roommate to a hotel? Yes. And so that, what is that, what's the legal significance of that offer when we're talking about accrual of the cause of action? Because I think at that point they're not being deliberately indifferent. So from our perspective, they're making some, well, and even from Iowa State, they're going to tell you they're making some effort to try and find space for her to be accommodating to her. The problem is those accommodations are not the same as what she had at that point in time and actually would have caused her much disruption to her studies. One, being in an uncomfortable room with students and strangers, that was a problem for her at that point in time and she talks about that. But she's not comfortable around strangers just because of what happened earlier that year. And then the temporary housing is really just move in, stay there for a little while, what is she going to do every other weekend when there's a football game? It's not a solution for her. And that's the biggest problem and why she stayed where she did as long as she could. Certainly her damage, I mean, that's why you actually get to the other problem with the district court's statement that there is no severe pervasive discrimination going on because she is vulnerable to discrimination. Other courts have noted that or found that just being that close, being in his presence, can be discrimination, can be harassment and certainly in this situation it had a great effect on her. But what she was trying to do is cooperate with Iowa State and get Iowa State to cooperate with her by listening to what they had said, which is we'll do something when the investigation is over. Thing is, Iowa State never did that. So tell me again, at what point did they become deliberately engaged? I think at the point where they, where Iowa State made the finding that he had raped her, finished their investigation as they said they would, but then made no changes to the housing. At that point in time. Did they continue to make her the offers they'd made her before? They did not make any further offers. They did not say that there was, the same rooms were available, nothing was available at that point in time. Any offers to move him? No. And in other cases that have been cited, one of them being Leder, the Connecticut case, they do move the perpetrator in that case. Not immediately, they offer her housing. As far as we know, that housing is comparable. There's nothing that says that it was worse housing than what she had. So this is a much different situation given what went on, but also that Iowa State said we'll do something and then didn't do anything. Thank you. Thank you, Mr. Zabracki. Mr. Teeter? Good morning, your honors. May it please the court, Derek Teeter for the Appley Iowa State University. Your honors, as the district court correctly found, there are numerous legal grounds to find summary judgment here, and I'll mention those in a moment. But at a global level, I think it's important to say this was a case where Iowa State did what it was supposed to do. When Ms. Maher came forward and made her report of sexual assault, Iowa State police officers immediately responded. She was transported to a hospital. She was student life, met with her parents, met with her, facilitated her class changes, facilitated her withdrawal. Her assault was in March, but she didn't disclose the identity of the perpetrator until May, right before school was to close for the summer. But when she did that, Iowa State immediately launched an investigation and imposed a no-contact order on Mr. Whetstone that indisputably was effective at preventing any substantive interaction between the two thereafter. Then in August, when Ms. Maher's parents and then she raised concerns about housing, Iowa State first reached out to Ms. Maher to ask her whether she would be interested in moving, and she said that she was not interested in moving. Nonetheless, they met with her and proposed these options of a converted den of the Memorial Union Hotel, and she indicated she didn't want to have any of those. It was not until September that the Equal Opportunity Office completed its investigation, which under Iowa State's policy is not a finding of responsibility, but rather the basis upon which charges are brought under the Student Code of Conduct, and then a hearing process results. At the end of that hearing process, Mr. Whetstone was expelled from the university. So, while Ms. Maher indisputably is not satisfied with some of the remedies that were offered to her, under Davis that's not the test for liability. The test is whether the university's overall response was clearly unreasonable or deliberately indifferent, which this court has described as turning a blind eye and doing nothing. Iowa State did not turn a blind eye and do nothing. It responded to Ms. Maher's concerns in ways that were not clearly unreasonable. As far as the primary ground for summary judgment of statute of limitations, I think it's clear, Your Honors, that the claim did accrue in August. From Ms. Maher's perspective, or a reasonable person in her perspective, as of August, she had told Iowa State that she was discomfort about the proximity of her housing to Mr. Whetstone. Iowa State responded by proposing alternatives that she deemed insufficient, and she's saying that because of that she suffered emotional distress. Those are all the elements of her cause of action, assuming that they can subsequently be proven. Well, what about the argument, I think as we heard it today, that Iowa State was attempting to do various things in August which were not acceptable, but still it didn't rise to the level of being deliberately indifferent until much later, a later point in time? So I would say two things to that, Your Honor. One, I've never heard an explanation for why it became different in September when the investigation nearly found a basis to charge Mr. Whetstone. From Ms. Maher's perspective, that of the plaintiff, she was incurring the injury that she's citing, the emotional distress of being in proximity to him, in August. And that proximity didn't change in September when charges were brought against him under the Student Code of Conduct. The suggestion has been made that somehow Iowa State told her they would reconsider the housing decision. That's not in the record. That's not in the record. What the court will find is that Ms. Maher and her parents clearly said they did not want her to move. So the notion that Iowa State somehow had to come back to her and again reiterate something she had already rejected, I think is also erroneous. As far as when Iowa State's full process was completed, and it adjudicated Mr. Whetstone... Let me come back to that. I just want to be clear. You're saying there's nothing in the record that Mr. Zabracki said earlier that in August or around that time, they said when the report comes back, we'll consider doing something else. I can't find it in the record. The statement was made in the appellant's brief with no record cite. Maybe Mr. Zabracki will tell us where he found it. I think it would be helpful if he could, because I've not been able to find that. The argument in their reply brief was that, well, because the explanation given was we can't move him pending the investigation, somehow an implication could be drawn from that or an inference that they might be willing to move him after. But that statement was never made to her. And I think part of this, too, is we need to have clarity as to how Iowa State's process works. That Equal Opportunity Office investigation is the basis upon which a charge is filed under the Student Code of Conduct. And then the alleged perpetrator has the right to a hearing before the adjudication is complete. That hearing procedure had not even begun in September of 2014. Apart from the statute of limitations ground, which we think is sufficient to affirm summary judgment by itself, the district court had two alternative bases, and there are an The first one being the overall response was not deliberately indifferent. So the controlling standard under Davis v. Monroe County Board says an institution can't be deliberately indifferent to known acts of sexual harassment in a way that subjects the student to further discrimination. That test of deliberate indifference is one that focuses on the totality of the case and is ultimately, I think, where this case has now gotten to. It's a quibble with a particular remedy while ignoring the fact that Iowa State did many other things, including imposing a no-contact order that Ms. Maher admits was effective at preventing any further substantive interaction between herself and Mr. Whetstone. All she said was that she saw him from a distance on campus, but she admits there was no interaction between the two of them. So if the concern is Iowa State needed to do something to prevent the possibility of further harassment, it did, and it was effective. It's not realistic to think that at least until an adjudication is made, a school can prevent any sort of situation where two parties might see each other. At least it's inconsistent to do that with the due process rights of the respondent, Mr. Whetstone. As far as our record is concerned, is there corroboration for the assault? Or is this basically, as it was presented to the university, was it the incitement of Ms. Maher alone? Ultimately, it boiled down to the two of them in a dorm room and a question of how intoxicated she was, whether that intoxication was the level of incapacitation. There were no other events leading up to it. And I think as Ms. Maher noted in some of her briefing, Iowa State even told her this was a very close case. And it was one that was contested with vigor by Mr. Whetstone in the administrative hearing phase. He had counsel and litigated that through it at every step of the way. So it was certainly not a case where there was some sort of objective evidence at the time that this is a case of sexual assault. They interviewed 15 and some odd witnesses before they could get to the point of charging him. And then the hearing process resulted thereafter. There are other alternative grounds. The district court correctly found in our view that there was an absence of pervasiveness. This is a particular part of Title IX that's different than Title VII. The Supreme Court in Davis noted that because Title IX is spending clause legislation and doesn't have an express cause of action, the implied cause of action was narrowly construed. And the Supreme Court explained that it couldn't foresee a circumstance where Congress would create liability arising from a single instance of sexual harassment, no matter how probrious. And that's ultimately what we have in this case, a single instance of sexual assault. And I'm not minimizing the effect that has on Ms. Maher. It's a In terms of whether there is institutional liability or institutional sex discrimination, that single instance is not sufficient to establish the pervasiveness requirement, which this Court's decision in Culver-Stockton indicates. Related to that, but a distinct concept, under both Davis and this Court's decision in Culver-Stockton, a school must have actual knowledge of the sexual harassment at issue before that triggers its duty to respond in a not clearly unreasonable way. This Court said in Culver-Stockton, though, that that actual knowledge has to predate the sexual assault upon which the claim is founded, or put differently, a single ex post report of sexual assault is insufficient to trigger that actual knowledge requirement. So that was another ground the District Court did not reach that could be an alternative basis to affirm summary judgment. And then the final ground which the District Court did not reach is the question of what I'll call causation. But as this Court's decision in Culver-Stockton made clear, and this ties back to Davis, where the Supreme Court said an institution is only liable for its own Here, because of the effectiveness of the no-contact order, Ms. Maher suffered no sexual harassment after reporting her sexual assault. So there's a lack of causation. There's no causal tie between the institution's action and anything that would qualify as sexual harassment. Or you might think of it this way. The best test of determining whether or not the institution's And here, it's uncontroverted, there was no further sexual harassment that Mr. Whetstone committed or attempted to commit on Ms. Maher. They were separated. And so for that reason as well, there's an alternative ground to affirm under the case law. Unless the Court has other questions, I'll yield my time. Any none? Thank you, Mr. Teeter. Your Honor, in our additional Statement of Facts at appendix page 290, we stated that Robinette Kelly told Melissa Maher that Iowa State University would not move Patrick Whetstone while they were in the middle of an investigation. And in Ms. Maher's deposition, she stated they couldn't move him in the middle of an investigation because it would mess up the investigation and show that they were treating him differently. That's what we're relying on is her understanding that they would not move him during the investigation, but they would move him at a later date. And so that was her understanding of what she was waiting for to see what was going to happen after the investigation. The counsel points out that Iowa State University issued a no-contact order and that there was no contact, but of course part of that is because Melissa Maher left the university because she couldn't handle what was going on, couldn't handle the close contact with him. We're not talking about a situation where she asked that he be immediately expelled. She just asked to be moved to another part of campus. Did she leave before the investigation was completed? No, she left shortly after the investigation was completed. I think about September 19th. She left September 26th when it was clear they weren't going to do anything. And multiple courts have noted that this situation can create a problem for, just the exact problem that Melissa Maher described. So in Takala versus the Regents of the University of California, in Doe versus Derby Board of Education, and Kelly versus Yale University Divinity School, all of those courts said yes, there is a connection between seeing that person regularly on campus and not feeling safe on campus. Even in Williams versus Board of Regents, the University of Georgia, they said the exact same thing. We need to do something to get these people away. And she never asked that he be expelled immediately, but that process takes a very long time. I mean, we're talking about a process that wasn't completed until July of 2015, more than a year and a half, almost a year and a half after the actual event. And because that process takes so long, there's nothing for her to keep her safe. And yeah, there are gonna be times, you know, it's still a small town, it's still a university campus, they may run into each other, but not on a regular basis, not taking the same bus, not at the same social events, if they're just on different sides of the campus. I mean, that's what she was looking for was a reasonable way to handle those things. Culver-Stockton deals with a different issue because Culver-Stockton was a student who came to visit campus, was raped while she was on campus, and never returned. The issue that we're dealing with here is not the initial, we've never claimed that Iowa State had any knowledge that Mr. Whetstone would rape her. There was nothing out there that would have given them that information. We're talking about their obligation afterwards to keep her, to provide her with the same educational opportunities, provide her with the same opportunities that the perpetrator had. And that's what did not happen here. And she waited. She understood that they weren't gonna do something while the investigation was going on, that they didn't have anything comparable for her, she waited to see what they were going to do. Ultimately, they did nothing. And that is really what we're focused on here. It's a much different issue than Culver-Stockton. In fact, the main holding of the court in Culver-Stockton is that because that visitor was not a student, the Title IX didn't even really apply because she wasn't getting educational benefits. She was actually just coming there to visit campus when that rape occurred. If there are no further questions, I'll be open. Thank you.